Shpigel & Associates, P.C.
1629 Sheepshead Bay Road, Ste. 303
Brooklyn, NY 11235
Tel (718) 280-5434
Fax (646) 355- 0242
E-mail: ishpigel@iselaw.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ZAP CELLULAR, INC. and ZAP CELLULAR, LTD.,

         Plaintiffs,

-Against-

Docket #:
ECF CASE

RABBI STUART KURLAND A/K/A SHIMON KURLAND,
RABBI GIL FRIEMAN, ANN ADLER, HAROLD KATZ,
AMERICAN FRIENDS OF DARCHEI BINAH,

JURY DEMANDED

         Defendants
-----------------------------------------------------------------X

Plaintiffs Zap Cellular, Inc. and Zap Cellular, Ltd. ("Plaintiffs"), by and through their attorneys SHPIGEL & ASSOCIATES, P.C., file this complaint against Defendants RABBI STUART KURLAND A/K/A SHIMON KURLAND, RABBI GIL FRIEMAN, ANN ADLER, HAROLD KATZ and AMERICAN FRIENDS OF DARCHEI BINAH ("Defendants"). Plaintiffs allege the following based on personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by and through their attorneys. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **THE PARTIES**

1. Plaintiff Zap Cellular, Inc., ("Zap Cellular") is a corporation incorporated in the state of New York. Jacob Yarmish, an individual residing in Israel, is the principal of Zap Cellular. Zap Cellular is in the business of selling cellular phone plans and/or minutes to end-users in Israel.

2. Plaintiff Zap Cellular, Ltd. is a partnership operating primarily in Israel. Prior to May 2010, Zap Cellular, Ltd was owned and operated by co-partners Jacob Yarmish ("Yarmish") and Defendant Rabbi Stuart Kurland A/K/A Shimon Kurland. Zap Cellular, Ltd is in the business of selling cellular phone plans and/or minutes to end-users in Israel.

3. Defendant Rabbi Stuart Kurland A/K/A Shimon Kurland ("Kurland") is an individual residing in Jerusalem, Israel.

4. Defendant Rabbi Gil Frieman ("Frieman") is an individual residing in Brooklyn, New York.

5. Defendant Ann Adler ("Adler") is an individual residing in Highland Park, Illinois and is the sister of Kurland.

6. Harold Katz ("Katz") is an individual residing in Chicago, Illinois and he is an accountant.

7. Defendant American Friends of Darchei Binah ("American Friends") is an unincorporated company that holds itself out as a charitable organization with offices both in Chicago, Illinois and Brooklyn, New York; however, upon belief, this company is not formally recognized as a charitable organization by either the States of Illinois or New York.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to federal question jurisdiction under 28 U.S.C §1331 and 18 U.S.C. § 1964(c).

2

9. Venue of the following claims is laid in the district pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claims herein occurred in the Eastern District of New York.

## FACTUAL ALLEGATIONS

10. Prior to May 2010, Zap Cellular was doing business as Zap Cellular, Ltd.

11. Zap Cellular was incorporated in New York in May 2010 and it took over the business of Zap Cellular, Ltd. Yarmish and Kurland were principals of Zap Cellular.

12. At all relevant times, Kurland was entrusted to manage all finances and accounts for Zap Cellular. Upon information and belief, at all relevant times, Kurland was employed by or was a principal of American Friends.

13. Upon information and belief, at all relevant times, Adler, Kurland's sister, was employed by or was a principal of American Friends.

14. Upon information and belief, at all relevant times, Katz was the personal accountant for Kurland and was employed by or was a principal of American Friends.

15. Upon information and belief, and at all relevant times, Frieman was Kurland's associate in the United States facilitating business deals for and with Kurland; and he was employed by or was a principal of American Friends.

16. Upon information and belief, American Friends holds itself out to be a charitable organization, even though it is not properly registered as such in the States in which it operates. Upon information and belief, American Friends is a "front" organization owned by or employing the individual Defendants in an attempt to give legitimacy to the individual Defendants' illicit activities.

17. Upon information and belief, Defendants maintained an association with one another and

3

with American Friends for the purpose of carrying out illicit activities.

18. Defendants together formed an unlawful enterprise, an association-in-fact of individuals and entities that had motives and purposes against the interests of Plaintiffs (the "Illicit Organization").

19. Defendants by and through the Illicit Organization, systematically funneled the assets of Plaintiffs into the accounts of American Friends for a period in excess of twelve (12) months.

20. These funds were not authorized by Zap Cellular for transfer. Zap Cellular had sole dominion and ownership of the assets.

21. Defendants, by and through the Illicit Organization caused economic injury to Plaintiffs of at least seven hundred thousand dollars ($700,000).

22. In the regular course of his duties at Zap Cellular and unaware of the formation and actions of the Illicit Organization, Yarmish requested an accounting of Zap Cellular's finances from Kurland in or about May 2010.

23. Kurland initially denied this request.

24. After some discussion, Kurland produced several account statements showing that, at least for a period extending beyond the previous twelve (12) months, a total of approximately seven hundred thousand dollars ($700,000) had been transferred to American Friends (the "Transferred Assets").

25. Defendants Rabbi Gil Frieman, Ann Adler, and Harold Katz aided Kurland in transferring Zap Cellular assets to American Friends by charging customer credit cards and having multiple transactions charged to American Friends.

26. American Friends was not authorized by Zap Cellular to receive payments and was not associated with Zap Cellular on either a professional or personal level.

27. At no point prior to the discovery of the Transferred Assets did Defendants make known to Plaintiffs the existence of the Illicit Organization, the transfer of funds to American Friends, or the acts effectuating the transfer of Zap Cellular assets.

28. Upon information and belief, Defendants transferred Zap Cellular funds to American Friends's accounts to evade paying taxes, to convert the money into American Friends's accounts in order to deprive Zap Cellular of its assets, and ultimately divide the amount amongst themselves.

29. Upon information and belief, Kurland willfully failed to declare the Transferred Assets as profits of Zap Cellular to State and Federal authorities, to Yarmish, and to Zap Cellular.

30. Defendants have failed to return the funds taken from Zap Cellular.

31. Additionally upon information and belief, Zap Cellular loaned to Kurland approximately four hundred thousand dollars ($400,000) comprised of two transactions. The first transaction was for four hundred thousand Israeli Shekels (₪400,000). The second transaction was for two hundred eighty thousand Israeli Shekels (₪280,000).

32. Of the monies loaned to Kurland, only two hundred eighty thousand dollars ($280,000) were returned.

33. Despite due demand by Plaintiffs, Kurland has failed to effectuate repayment of the loan.

34. As a result of all of the foregoing, Plaintiffs were damaged and seek relief as more fully described below:

## COUNT ONE
(Civil Racketeering Influenced and Corrupt Organizations Act (RICO) pursuant to 18 U.S.C. § 1962 (c))

35. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim hereat.

36. 18 USC § 1962(c) makes it "unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."

37. All Defendants are persons within the meaning of 18 USC § 1961(3) in that they are each capable of holding a legal or beneficial interest in property.

38. In violation of the above-mentioned statute, each Defendant including Shimon Kurland, Gil Frieman, Ann Adler, Harold Katz, and American Friends associated with the enterprise, the Illicit Organization, which was an association in fact consisting of at least Shimon Kurland, Gil Fireman, Ann Adler, Harold Katz, and American Friends. The Illicit Organization is separate and apart from Zap Cellular and Yarmish.

39. The Illicit Organization engaged in, and conducted activities which affected interstate or foreign commerce.

40. The Defendants, as members of the Illicit Organization, conducted or participated in the Illicit Organization through a pattern of racketeering activity which included but was not limited to wire fraud and mail fraud. Defendants had control over the finances of Zap Cellular and control over the instrumentalities necessary to commit acts in furtherance of their scheme. Upon belief, Defendants, in their roles as members of the Illicit Organization, each either supervised, planned, or carried out actions in furtherance of their scheme. Defendants kept the Illicit Organization and its operations clandestine, especially from Plaintiffs.

41. The Illicit Organization was formed in order to secret monies from the accounts of Zap Cellular into the accounts of American Friends in a scheme apparently aimed at avoiding tax liability and stealing money. Members of the Illicit Organization collaborated with each other

on a continuing basis and committed multiple acts of the type herein described in furtherance of the scheme.

42. The Illicit Organization existed for ample and sufficient time for Defendants to pursue their illegal purposes, and which resulted in the theft of up to seven hundred thousand dollars ($700,000) from Plaintiffs.

43. The Illicit Organization committed more than two acts in furtherance of the scheme within a ten (10) year period. The Illicit Organization performed these acts several times over a period with a duration in excess of one year. The racketeering activities were committed by the same persons, the Defendants, for the same purpose, using the same or similar instrumentalities, in the same or similar fashion, with the same or similar results, and against the same or similar victims, regularly across a time period exceeding one year; thus establishing a pattern.

44. Wire fraud, under 18 U.S.C. § 1343, is defined as for the purposes of executing Defendants' scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses, representations, and promises, Defendants did transmit and cause to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

45. Mail fraud, under 18 U.S.C. § 1341, is defined as "devis[ing] any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial

interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon[.]"

46. The acts of Defendants committed in furtherance of their scheme, including at least wire fraud and mail fraud, qualify as "racketeering activity" under 18 U.S.C. § 1961 (1).

47. The foregoing predicate acts of racketeering activity conducted by Defendants through the Illicit Organization caused Plaintiffs to lose money, lose a great deal of the value of Plaintiffs' monetary entitlements or expectations, and these predicate acts harmed Plaintiffs and caused other consequential, incidental and special damages.

48. The Defendants were illicitly enriched through the receipt of funds transferred from Plaintiffs' accounts.

## COUNT TWO
(Civil Racketeering Influenced and Corrupt Organizations Act (RICO) Conspiracy pursuant to 18 U.S.C. § 1962(d))

49. Plaintiffs hereby incorporate by reference all of the allegations set forth above as though fully set forth verbatim hereat.

50. 18 U.S.C. § 1962 makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [18 U.S.C. § 1962]."

51. Each and every Defendant intended to enter into the agreement with the other Defendants to commit acts constituting racketeering activity.

52. Each and every Defendant willfully entered into an agreement with the other Defendants to engage in the aforementioned acts constituting racketeering activity.

53. Each and every Defendant intended to achieve the objective of their agreement, which was to commit acts constituting racketeering activity.

54. Defendants committed overt acts, including at least wire transfers of money, towards commission of acts constituting racketeering activity. As such, Defendants caused injury to Plaintiffs.

55. The foregoing conspiracy and predicate acts of racketeering activity conducted by Defendants through the Illicit Organization caused Plaintiffs to lose money, lose a great deal of the value of Plaintiffs' monetary entitlements or expectations, and these predicate acts harmed Plaintiffs and caused other consequential, incidental and special damages.

56. The Defendants were illicitly enriched through the receipt of funds transferred from Plaintiffs' accounts.

## COUNT THREE
(Fraud)

57. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim hereat.

58. By the illegal and fraudulent acts and schemes described above Defendants willfully and intentionally defrauded Plaintiffs and members of the class and made or caused to be made false, fraudulent, and material misrepresentations and omissions to Plaintiffs. Each of the wire transfers and or checks that Defendants caused to be made were fraudulently obtained in that they were based on intentional misrepresentations and omissions to Plaintiffs.

59. In making and carrying out these material misrepresentations, the Defendants intended to and did deceive and defraud Plaintiffs.

60. Plaintiff actually, reasonably, foreseeably, and justifiably relied upon the Defendants' misrepresentations and omissions. The fraudulent statements as to each defendant, to whom each statement was made, the date, time and place thereof, and the facts and circumstances

thereof, are reserved for future specification by or on behalf of Plaintiffs, based on discovery, disclosure and other pre-trial preliminary procedures.

61. As a direct and proximate result of Defendant's material misrepresentations and omissions, Plaintiffs suffered damages.

## COUNT FOUR
(Aiding and Abetting Fraud)

62. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim hereat.

63. By the illegal and fraudulent acts and schemes described above, Defendants willfully and intentionally defrauded Plaintiffs and made or caused to be made false, fraudulent and material representations and omissions to Plaintiffs.

64. All the Defendants aided and abetted the fraudulent activities of Defendants and each of them, by, among other things, cashing checks and accepting wire transfers.

65. Accordingly, the Defendants knowingly and willfully provided substantial assistance and encouragement to one or more of the defendants, in connection with their fraudulent activities, thus aiding and abetting such fraudulent activities.

66. The Defendants' aiding and abetting these fraudulent activities proximately caused the Plaintiffs' damages.

## COUNT FIVE
(Conversion)

67. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim hereat.

68. Plaintiffs had rightful title to the funds that Kurland converted.

69. Kurland exercised unauthorized dominion and control over Plaintiff funds, including the $400,000 loan to Kurland made in two transfers of four hundred thousand and two hundred eighty thousand Israeli Shekels (₪400,000 and ₪280,000), and transferred such funds to business entities' accounts which one or more of them controlled.

70. Kurland has only returned $280,000 of Zap Cellular's loan.

71. Kurland had no legal or equitable rights to Plaintiffs' funds.

72. By virtue of the foregoing, the Kurland exercised acts of unauthorized dominion over Plaintiffs' monies resulting in denial of Plaintiffs' clear, uncontroverted, and unequivocal right to such monies, thereby greatly damaging and injuring the Plaintiffs.

73. As a direct and proximate result of the aforesaid conduct, Plaintiffs have suffered damages.

## COUNT SIX
(Breach Of Fiduciary Duty)

74. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim hereat.

75. Defendants along with Defendant Shimon Kurland are the Plaintiffs' fiduciaries, having been provided with and entrusted with Plaintiffs' moneys. As such, Defendants have a fiduciary obligation to the Plaintiffs to discharge their duties, with trust, loyalty, good faith, and due care.

76. Defendants were required to exercise prudent supervision over their fiduciary relationships with the Plaintiffs and to use their utmost ability to manage the Plaintiffs' money in a fair, just, honest and equitable manner.

77. The Plaintiffs placed their trust and confidence in these entities and the individuals by entrusting the Defendants with managing and their money.

78. Upon information and belief, Plaintiffs, given that fiduciary relationship, had a legal right to expect that Shimon Kurland, and all of the aforesaid defendants, and each of the aforesaid defendants would not steal their money.

79. Defendants were required to use their utmost ability to manage the assets and moneys upon which Plaintiffs relied. By reason of the aforesaid fiduciary relationships, Plaintiffs had a legal right to expect that defendants and each of them would safeguard these monies, and would not steal their money.

80. Upon information and belief, the Defendants, breached their fiduciary duties to the Plaintiffs by stealing their funds on numerous occasions, thus violating their duty of trust, loyalty, good faith, and due care.

81. Additionally the Defendants, continue to breach their fiduciary duty through their continuing failure to return funds converted and provide payment of the funds upon which Plaintiffs relied, to which all Plaintiffs were and continue to be entitled. The Defendants, jointly and severally, continue to breach their fiduciary duties to the Plaintiffs.

82. The conduct of the Defendants, and all other defendants, jointly and severally, constitute(s) conscious misbehavior and recklessness.

83. The breaches of the fiduciary duties of the Defendants, jointly and severally, proximately caused severe, serious, ongoing, and financially devastating damages to Plaintiffs.

### COUNT SEVEN
(Aiding and Abetting Breach of Fiduciary Duty)

84. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim hereat.

85. Plaintiffs invested moneys through the Defendants. Plaintiffs placed their trust in Shimon Kurland who exercised control over assets and monies provided by Plaintiffs.

86. Defendants owed Plaintiffs fiduciary obligations of trust, loyalty, good faith and due care.

87. As set forth in Count Six above, the Defendants violated Plaintiffs' trust and breached their fiduciary duty.

88. Each of the Defendants had knowledge of Plaintiff and class action plaintiffs' fiduciary relationship.

89. As alleged in specific detail, Defendants knowingly helped and encouraged each other to commit wrongful acts against the Plaintiffs.

90. Accordingly, Defendants knowingly and willfully provided substantial assistance and encouragement to each other in connection with their breaches of fiduciary duties, thus aiding and abetting said defendants' breaches of their fiduciary duties.

91. The actions of the aforesaid defendants in aiding and abetting these breaches of fiduciary duties proximately caused the Plaintiffs' damages.

## COUNT EIGHT
(Civil Conspiracy)

92. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim hereat.

93. As set forth previously, Defendants committed numerous torts against Plaintiffs including, among other things, fraud, aiding and abetting fraud, conversion, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.

94. Defendants intentionally agreed to divert Plaintiffs' funds into American Friends's bank accounts.

95. These Defendants committed numerous intentional, overt acts in furtherance of this conspiracy. In total, the Defendants completed transactions that resulted in the deposit of up to

$700,000 into American Friends bank accounts. As a direct and proximate result of the conspiracy, Plaintiffs have suffered damages.

## COUNT NINE
(Unjust Enrichment)

96. Plaintiff hereby incorporates by reference all of the allegations set forth above as though fully set forth verbatim hereat.

97. As a result of Defendants' actions they were unjustly enriched.

98. The actions, of the Defendants, were at Plaintiffs' expense, because such actions caused the theft of up to $700,000.

99. Defendants had no legal or equitable rights to the aforesaid funds for any of the numerous actions set forth in detail above.

100. By virtue of the foregoing, the Defendants were unjustly enriched due to their acts of unauthorized dominion over the aforesaid monies in denial of Plaintiffs' clear, uncontroverted, and unequivocal right to such monies.

101. Equity and good conscience demand that Defendants and each of them be required to provide funds in a sum of money representing compensatory damages in a sum to be determined equal to at least the aforesaid sum of $700,000, plus consequential damages, and the aforesaid sum of compensatory damages ultimately determined be trebled pursuant to the aforesaid federal statutes.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, PLAINTIFFS ZAP CELLULAR, INC., and ZAP CELLULAR, LTD, respectfully request that the Court:

(a) Order, upon the basis of Jury Verdict at the time of trial, that Defendants pay PLAINTIFFS compensatory and consequential damages in an amount as yet

undetermined, as to which THE PLAINTIFFS presently requests $700,000 for compensatory damages; and which amount for compensatory damages, when ultimately and precisely determined, is to be trebled to a total of two million one hundred thousand dollars ($2,100,000) pursuant to 18 U.S.C. § 1964 (c);

(b) Order, upon the basis of Jury Verdict at the time of trial, that Defendant Kurland pay PLAINTIFFS compensatory damages for an unrepaid loan in the amount of one hundred twenty thousand dollars ($120,000);

(c) Order that Defendants pay PLAINTIFFS costs of this action, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c);

(d) Order that Defendants pay PLAINTIFFS any and all damages sustained, arising from the foregoing wrongful and unlawful acts of Defendants;

(e) Order that PLAINTIFFS be awarded their costs and reasonable attorney's fees incurred in connection with the institution and prosecution of this civil action;

(f) Order that one or more of the Defendants, as the JURY may determine, pay PLAINTIFFS punitive damages, trebled based upon the compensatory damages sum ultimately so determined;

(g) Order such other and further relief as justice may require.

## DEMAND FOR A JURY TRIAL

PLAINTIFF ZAP CELLULAR, INC., and ZAP CELLULAR, LTD hereby demand a jury for all issues for which they have a right to a trial by jury.

Respectfully Submitted,

Dated: Brooklyn, New York
February 6th, 2015

Irina Shpigel, Esq
Shpigel & Associates, P.C.
*Attorney for Plaintiffs*
1629 Sheepshead Bay Road, Suite 303
Tel: (718) 280-5434
Fax: (646) 355-0242
E-Mail: ishpigel@iselaw.com

15