UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                      :

ZAP CELLULAR, INC., as successor in interest   :
to ZAP CELLULAR, LTD.,
                                      :
                            Plaintiffs,       :
                                        :
                   - against -           :
                                        :
RABBI STUART KURLAND A/K/A SHIMON    :
KURLAND, RABBI GIL FRIEMAN, ANN        :
ADLER, HAROLD KATZ, and AMERICAN      :
FRIENDS OF DARCHEI BINAH,            :
                                        :
                        Defendants.     :

---------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

15 Civ. 682 (BMC)

**COGAN,** District Judge.

        Plaintiffs bring this action pursuant to the civil RICO statute, 18 U.S.C. § 1962(c)-(d),

and allege that defendants formed an unlawful enterprise to divert and convert plaintiffs' assets.

They also bring related state and common law causes of action for fraud, aiding and abetting

fraud, conversion, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil

conspiracy, and unjust enrichment. Presently before the Court are defendant Frieman's motion

to dismiss the First Amended Complaint ("FAC") and plaintiffs' cross-motion for leave to

amend the complaint.[1] Because plaintiffs' RICO causes of action fail to state a claim and no

additional allegations could make common law fraud claim into a RICO claim, defendant

Frieman's motion to dismiss is granted and plaintiffs' cross-motion to amend is denied as futile.

---

[1] Only two defendants, Rabbi Gil Frieman and Harold Katz, have appeared in this action. Plaintiffs voluntarily
dismissed their claims against defendant Katz without prejudice.

**BACKGROUND**

## I.     First Amended Complaint

The following allegations are taken from the FAC.  Plaintiffs sell cell phone plans and/or minutes to end users in Israel.  Plaintiff Zap Cellular, Ltd. ("Zap Ltd.") was an equal partnership between defendant Kurland and Jacob Yarmish that operated primarily in Israel.[2]  Defendant Kurland induced Yarmish to enter into this partnership by misrepresenting that Kurland "would conduct and was conducting Plaintiffs' financial affairs in accordance with his fiduciary duties." Zap Ltd.'s payments were processed in New York and Illinois.  In May 2010, plaintiff Zap Cellular, Inc. ("Zap Inc."), a New York corporation, was formed and "took over the business" of Zap Ltd. "as its successor in interest."  Yarmish is the principal of Zap Inc.

Plaintiffs claim that defendants, acting in concert, engaged in a scheme to steal money from Zap Ltd. between April 2009 and May 2010.  Defendant Kurland, who managed Zap Ltd.'s finances, organized this enterprise and enlisted the help of defendants Adler and Frieman to manage Zap Ltd.'s accounts and process customer payments.  Defendants Kurland, Frieman, and Adler used defendant American Friends of Darchei Binah ("American Friends"),[3] another company operated by defendant Kurland, and for which defendants Frieman and Adler were officers, as a front to facilitate this scheme.

Specifically, plaintiffs maintain that defendants diverted approximately $700,000 from Zap Ltd. and distributed that amount among themselves for their personal use.  Instead of depositing payments from Zap Ltd.'s customers into Zap Ltd.'s bank accounts, the FAC alleges

---

[2] Yarmish is a non-party in the FAC who lives in Israel and is named as a plaintiff in the proposed Second Amended Complaint.

[3] Darchei Binah is a girl's seminary school located in Israel.  Defendant Kurland is the co-founder, director, and dean of the school.  American Friends is an unincorporated company, which operates out of defendant Frieman's private residence in Brooklyn, and solicits donations and processes tuition payments for American students enrolled in Darchei Binah.

that defendant Frieman, under the direction of defendant Kurland, charged Zap Ltd.'s customer's credit cards to the Merchant Account of defendant American Friends, thus diverting the payments from Zap Ltd.'s bank accounts. Afterwards, defendant Adler transferred these amounts, including by interstate wire transfers, into the individual defendants' personal accounts.

In order to conceal this conspiracy, defendant Kurland knowingly misrepresented to Yarmish that Zap Ltd. was operating at a loss and that the business was unprofitable. Harold Katz, the accountant for plaintiffs and defendant American friends, acting in concert with the other individual defendants, "forged and altered the financial statements of Plaintiffs in order to conceal" defendants' conduct. Moreover, on December 27, 2009, Yarmish requested copies of Zap Cellular Merchant Accounts and bank statements from defendants Kurland and Frieman. Defendant Kurland refused to provide the bank statements and stated that defendant Frieman destroyed all of the Merchant Account Statements. Finally, around May 2010, after Zap Inc. was formed, Yarmish "requested an accounting of Zap Cellular's finances." In response, defendant Kurland "locked Yarmish out of Zap Cellular offices, changed the locks, removed and concealed the central sever of Plaintiffs' computers, fired all of the employees, including the CEO of the company . . . and changed all of the access passwords to the computers . . . ."

Shortly after these incidents, Yarmish filed a lawsuit in Israel against defendant Kurland and two other companies for declaratory relief, an accounting, and pecuniary relief. Plaintiffs allege that they learned about defendants' fraud on November 12, 2012, during discovery in the Israeli action.

Finally, plaintiffs claim that "Zap Cellular" loaned defendant Kurland approximately $400,000, of which he repaid only $280,000.

## II.     Proposed Second Amended Complaint

Plaintiffs' proposed Second Amended Complaint ("SAC") pleads the same causes of action as the FAC.  It also adds Jacob Yarmish as a plaintiff,[4] removes Zap Ltd. as a plaintiff, and removes Harold Katz as a defendant.  Factually, the SAC makes many of the same allegations as the FAC.  The following summarizes the additional facts offered in the SAC.

The SAC alleges that defendant Kurland enlisted his sister, defendant Adler, to open ATBD Services Ltd. ("ATBD"), an Israeli corporation that provided cellular phone services to American students attending Darchei Binah.  He also incorporated Kol Contacts ("Kol") in Illinois to process customer payments for ATBD.  In September 2007, ATBD "was on the verge of collapse."  Therefore, defendant Kurland met with Yarmish, a telecommunications executive, on numerous occasions in 2007 in an attempt to partner with him to save ATBD and Kol.  At the time, Yarmish was bound by a non-compete clause, so he could not commit to a partnership with defendant Kurland.  Accordingly, the two agreed to revisit partnership talks in 2009.

On February 10, 2009, defendant Kurland approached Yarmish with a proposal to join ATBD and/or Kol as a partner.  Yarmish rejected this proposal and insisted that the two start a new company.  In February 2009, Yarmish and defendant Kurland orally agreed to be 50-50 partners in the new company, Zap Cellular.  According to the oral agreement, Yarmish "would generate new clients, and manage the current client accounts of the business as well as pursue future accounts on behalf of the business," while defendant Kurland "would manage the company finances, which included processing customer payments."  Neither Yarmish nor defendant Kurland would receive a salary.

---

[4] Although the FAC alleged that Yarmish resides in Israel, the SAC alleges that Yarmish is a resident of both New York and Israel.

Although Harold Katz and defendant Kurland represented to Yarmish that Zap Ltd. had been registered as a separate corporate entity in the United States with separate bank accounts, it was not registered and had no separate bank accounts. To conceal this fraud further, the SAC alleges, a false initial shareholder meeting was held on September 23, 2009 where defendant Kurland and Yarmish hired a CEO for Zap Ltd. and voted to appoint themselves as members of the board of directors. Moreover, before Zap Ltd. received any initial deposits from its customers, defendant Kurland asked Yarmish to pay employee salaries. Yarmish paid 40,000 Israeli Shekels from his personal account. When Yarmish asked for the return of this money, defendant Kurland falsely represented that Zap Ltd. did not have enough sufficient funds.

From September 2009 until June 2010, Yarmish and defendant Kurland managed and operated Zap Ltd. On May 15, 2010, Yarmish discovered that Zap Ltd. "was not incorporated and had been operating as a general partnership in contravention of the Kurland and Yarmish's agreement." Defendant Kurland admitted that Katz failed to incorporate the company. Nevertheless, on May 19, 2010, Katz and Yarmish incorporated Zap Inc. in New York. Defendant Kurland and Yarmish "transferred all of the assets, rights, obligations and causes of action formerly attributed to" Zap Ltd. to Zap Inc., and Zap Inc. "took over the business of Zap Cellular, Ltd., as its successor in interest."

During the May 15, 2010 meeting, Yarmish stated that he would not move forward as defendant Kurland's partner unless he was shown "Zap's books, accounts and records." Defendant Kurland never provided the books and records to Yarmish. Accordingly, on May 31, 2010, Yarmish and defendant Kurland decided to part ways. The two agreed that Yarmish would continue operating under the Zap name, while Kurland would continue operating Kol. On June 2, 2010, in response to Yarmish's request to inspect Zap's financial accounts, defendant

Kurland "changed the locks in the Zap offices, removed and concealed the central server of Zap's computers, fired all of the employees . . . and changed all of the access passwords" to Zap Inc.'s computers. In June 2010, defendants also allegedly destroyed documents.[5]

In response, Yarmish filed a complaint in Jerusalem Magistrate Court on June 17, 2010 against defendant Kurland, ATBD, and Kol. On November 12, 2012, during the course of the Israeli litigation, plaintiffs discovered defendants' scheme to steal from Zap Ltd. after hearing the testimony of two individuals. One of them, Ephraim Chadosh, was a former business partner of defendant Kurland. The SAC alleges that Chadosh testified that defendant Kurland defrauded him in 1998 in substantially the same ways as he defrauded plaintiffs. In particular, defendant Kurland transferred the assets of Kol Chefetz, the telecommunications company in which he was a partner with Chadosh, to his personal accounts, and fraudulently misrepresented that Kol Chefetz was not profitable.

Finally, plaintiffs allege that defendants used the U.S. Postal Service and interstate wires to further their fraudulent scheme by sending and/or receiving faxes, invoices, billing statements, etc. which portrayed Zap Ltd. as a corporate entity. The SAC also alleges that plaintiffs cannot plead all instances of mail and wire fraud with particularity because the particulars of many of the communications are within the exclusive control of defendants. Nevertheless, plaintiffs provide a chart with a list of e-mails that allegedly demonstrate that defendants had the intent to defraud Zap Ltd. and Yarmish. The chart offers no facts about the content of these e-mails.

## DISCUSSION

Defendant Frieman moves to dismiss the FAC for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1),[6] and for failure to state a claim, pursuant to

---

[5] Plaintiffs believe these documents contained facts relevant to their RICO claims.

Rule 12(b)(6). Plaintiffs cross-move to amend the FAC, pursuant to Rule 15(a)(2), on the basis

that they have recently discovered new facts pertaining to their RICO claims. The Court will

consider the Rule 12(b)(1) motion first, see Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,

896 F.2d 674 (2d Cir. 1990), and will analyze this motion in the context of plaintiffs' cross-

motion for leave to amend, as the proposed SAC, if accepted, would "supersede[] the original

[complaint] and render[] [it] of no legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665,

668 (2d Cir. 1977); see also Waves Audio, Ltd. v. Uptime, Inc., No. 09 Civ. 689, 2010 WL

308301, at *2 (S.D.N.Y. Jan. 22, 2010) ("Since it is axiomatic that an amended pleading

supersedes the prior pleading . . . plaintiffs cannot simultaneously seek leave to file their

proposed amended complaint and impliedly rely on more specific allegations in the original

complaint which they have abandoned.") (internal citation omitted).

## I.     Legal Standards

### A.    Rule 12(b)(1)

Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is appropriate "when

the district court lacks the statutory or constitutional power to adjudicate [the case]." Makarova

v. United States, 201 F.3d 110, 113 (2d Cir. 2000). It is a plaintiff's burden to show that subject

matter jurisdiction exists by a preponderance of the evidence. See id. In considering a motion to

dismiss for lack of subject matter jurisdiction, a court may consider affidavits and other materials

outside the pleadings. See id. A court must "accept as true all material facts alleged in the

---

[6] Defendant Frieman challenges subject matter jurisdiction on the basis that plaintiffs lack standing. See Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89 (2d Cir. 2006) (explaining that standing challenges should be brought as motions under Rule 12(b)(1)). In addition, he argues that the Court lacks jurisdiction because of the extraterritorial nature of defendants' alleged conduct. He cites to North S. Fin. Corp. v. Al-Turki, 100 F.3d 1046 (2d Cir. 1996), for the proposition that federal courts lack subject matter jurisdiction over RICO claims premised on extraterritorial conduct. However Al-Turki was abrogated such that "the analysis of RICO's extraterritorial reach must be conducted under the auspices of Fed. R. Civ. P. 12(b)(6)" instead of Rule 12(b)(1). Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 32 (2d Cir. 2010). Therefore, the Court will not consider defendant Frieman's extraterritoriality argument as part of the subject matter jurisdiction challenge.

complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009) (internal quotation marks and citation omitted). However, even on a motion to dismiss for lack of subject matter jurisdiction, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (internal quotation marks omitted). A court may also "presume that general allegations embrace those specific facts that are necessary to support the claim." Garcia v. Four Brothers Pizza, Inc., No. 13 Civ. 1505, 2014 WL 2211958, at *2 (S.D.N.Y. May 23, 2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130 (1992)).

Standing relates to "the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197 (1975). "[A] plaintiff must demonstrate standing for each claim and form of relief sought." Baur v. Veneman, 352 F.3d 625, 642 n.15 (2d Cir. 2003). In order to establish standing,

> a plaintiff must show [1] that he 'suffered an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical'; [2] that there was a 'causal connection between the injury and the conduct complained of'; and [3] that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'

Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (quoting Lujan 504 U.S. at 560) (citations and internal quotation marks omitted).

### B. Rule 12(b)(6)

The Supreme Court has defined the standard on a motion to dismiss for failure to state a claim as a "two-pronged approach." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S Ct. 1937 (2009). First, a court must construe a complaint's factual allegations as true, but need not accept the veracity of legal conclusions. Id.at 678. Second, a court must determine whether the

complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Thus, in order to defeat a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). Therefore, the "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citation omitted). Neither legal conclusions nor "[t]hreadbare recitals of the elements of a cause of action" states a claim because "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79 (citation omitted).

Finally, on a motion to dismiss for failure to state a claim, a court may consider, in addition to the factual allegations within the complaint, "documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken are considered." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

### C. Rule 9(b)

Where, as here, a plaintiff alleges a RICO claim sounding in fraud, Rule 9(b) that "the circumstances constituting fraud" must be stated "with particularity." This heightened pleading standard is "designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (citation omitted). Furthermore, such pleadings cannot

be based upon information and belief, and should should "specify the time, place, speaker, and content of the alleged misrepresentations." Id. Finally, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### D. Rule 15(a)

Federal Rule of Civil Procedure 15(a) provides that a plaintiff may amend the complaint once as a matter of right at any time before a responsive pleading is served. After a defendant answers the complaint, a plaintiff can only amend the pleadings with consent of the opposing party or with the court's permission. See Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." Id. However, leave may be denied where there is "evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). An amendment is futile when the proposed amended complaint "could not withstand a motion to dismiss, such as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)." Schiff v. Suffolk Cnty. Police Dep't, No. 12 Civ. 1410, 2015 WL 1774704, at *4 (E.D.N.Y. Apr. 20, 2015) (citing Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, 615 F.3d 97, 99 (2d Cir. 2010) (holding that amendment would be futile because proposed amended complaint did not provide basis for subject matter jurisdiction) and Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).")).

## II.    Subject Matter Jurisdiction

Defendant Frieman argues that neither plaintiff has standing to bring the RICO claims. The Court will examine each plaintiff's standing in turn.

### A. Jacob Yarmish

Jacob Yarmish lacks standing to bring the RICO claims. Initially, to the extent Yarmish possessed any claims based on his partnership interest in Zap Ltd., he is not the proper party to seek redress for those injuries. Plaintiffs appear to acknowledge this point and instead argue that Yarmish "suffered an injury separate and apart from Zap Ltd." Namely, Yarmish was "injured in that he provided uncompensated labor and did not receive any dividends or salary."

Payment of dividends or salary to Yarmish for his work with Zap Ltd. is entirely dependent on his partnership interest in therein. This fact alone provides sufficient reason to find that Yarmish lacks standing to bring the RICO claims. Nevertheless, even if this injury were somehow unrelated to Yarmish's role as a partner of Zap Ltd., the SAC contradicts the facts underlying plaintiffs' argument. It alleges that when Yarmish and defendant Kurland entered into the oral agreement to become partners and establish Zap Ltd., "it was also agreed that neither Kurland nor Yarmish would draw a salary." Since Yarmish was not supposed to receive a salary, he was not injured by the fact that he did not receive one. Without this injury, Yarmish lacks standing to bring the RICO claims.

### B. Zap Inc.

Zap Inc., having been formed after the conclusion of any alleged RICO enterprise, was not the target of the enterprise, and was not injured by it. Therefore, it lacks standing on its own. See G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 549 (S.D.N.Y. 2002) ("To have standing, plaintiffs must show that they were the 'intended targets of the RICO violations'. . ..") (citing In re Am. Exp. Co. S'holder Litig., 39 F.3d 395, 400 (2d Cir. 1994)). Perhaps recognizing that Zap Inc. was not the intended target of defendants' alleged scheme, plaintiffs

argue that Zap Inc. has standing to bring the RICO claims on behalf of Zap Ltd. because Zap

Ltd. assigned all of its rights and obligations to Zap Inc.

Assuming the truth of the allegations in the SAC, plaintiffs have established a *prima facie*

case that Zap Inc. has standing to bring the RICO claims.  First, the SAC alleges that defendant

Kurland and Yarmish orally agreed to be equal partners in Zap Ltd. in February 2009.  <u>See</u>

<u>Missan v. Schoenfeld</u>, 95 A.D.2d 198, 208, 465 N.Y.S.2d 706 (1st Dep't 1983) ("The law is well

settled that a partnership agreement may be oral.") (internal citations omitted).  The SAC also

describes the terms of that agreement and alleges a course of dealing between defendant Yarmish

and Kurland, explaining that the two operated Zap Ltd. in accordance with those terms for over

one year.  Second, the SAC alleges that defendant Kurland and Yarmish assigned all causes of

action formerly held by Zap Ltd. to Zap Inc.  It states, "Kurland and Yarmish transferred all of

the assets, rights, obligations and causes of action formerly attributed to Zap Cellular Ltd., to Zap

Cellular, Inc., and took over the business of Zap Cellular, Ltd., as its successor in interest."

Assuming the truth of this allegation, as the Court must at this stage, plaintiffs have satisfactorily

alleged that Zap Inc. acquired Zap Ltd.'s causes of action.  <u>See</u> <u>Banque Arabe et Internationale</u>

<u>D'Investissement v. Maryland Nat. Bank</u>, 57 F.3d 146, 151-52 (2d Cir. 1995) ("New York law

does not require specific boilerplate language to accomplish the transfer of causes of action

sounding in tort.").  Moreover, the assignment broadly includes all "causes of action," which

encompasses the RICO claims, since such claims are generally assignable.  <u>See</u> <u>Kalimantano</u>

<u>GmbH v. Motion in Time, Inc.</u>, 939 F. Supp. 2d 392, 400 n.2 (S.D.N.Y. 2013) (citing <u>Nat'l</u>

<u>Asbestos Workers Med. Fund v. Philip Morris, Inc.</u>, 74 F. Supp. 2d 213, 217 (E.D.N.Y. 1999)

(collecting cases)).  As a result, the SAC makes a *prima facie* case that Zap Inc. has standing to

bring the RICO claims as Zap Ltd.'s successor in interest.

The legal arguments advanced by defendant Frieman do not alter this conclusion. Initially, defendant Frieman argues that plaintiffs do not allege, as they must, that the RICO claims were expressly assigned to Zap Inc. Defendant Frieman does not rely on any authority from the Second Circuit, and it does not appear that the Second Circuit has addressed the issue of whether assignment of RICO claims must be express. Instead, defendant Frieman relies on Lerman v. Joyce Int'l, Inc., 10 F.3d 106 (3d Cir. 1993), for the proposition that assignment of RICO claims must be express. Lerman, however, supports plaintiffs' position.

In Lerman, Joyce International Inc. ("Joyce") purchased an unincorporated division from the Litton Selling Entities called the Litton Office Products Center ("LOPC"). "The purchase agreement for LOPC provided that the LOPC assets acquired by Joyce included 'without limitation, any and all of the following: . . . causes of action, judgments, claims and demands of whatsoever nature.'" Id. at 108. At trial, Joyce recovered on its RICO counterclaims against David Lerman, an executive vice president of LOPC, who was paying bribes to LOPC's customers through a fraudulent billing scheme. On appeal, Lerman argued that Joyce could not recover on the RICO counterclaims because the assignment was not express.

The Third Circuit disagreed. It explained that while generally, "terms of art are not required for a valid assignment," since it previously held that assignment of a claim under Section 4 of the Clayton Act must be express, and because that provision served as a model for the provision of the RICO statute authorizing private civil actions, 18 U.S.C. § 1964, "we assume that an assignment of a RICO claim must also be express." Id. at 112. Nevertheless, because the purchase agreement "expressly assigned to Joyce 'all of' LOPC's' 'causes of action, . . . claims and demands of whatsoever nature,'" it was "unambiguous and all-inclusive," such that the assignment was "express." Id.

Therefore, even under <u>Lerman</u>, plaintiffs' allegation that defendant Kurland and Yarmish assigned "all . . . causes of action formerly attributed to Zap Cellular, Ltd., to Zap Cellular, Inc.," is similarly unambiguous and inclusive enough to satisfy the requirement that the assignment was express.[7]

Defendant Frieman also argues that the RICO claims could not have been assigned because the SAC does not allege that either defendant Kurland or Yarmish was aware of the RICO cause of action at the time of the assignment. This argument is unavailing and defendant Frieman cites to no federal authority to support it. In fact, the federal authority that he relies on elsewhere permitted precisely such an assignment. In <u>Lerman</u>, Joyce was allowed to bring its RICO counterclaims despite the fact that it only discovered those claims after it signed the purchase agreement and was assigned all of LOPC's causes of action.

Although the legal arguments defendant Frieman directs to the face of the complaint fall short, he has also submitted a declaration from defendant Kurland in support of his motion to dismiss and in opposition to plaintiffs' cross-motion to amend. Defendant Kurland disputes that Zap Ltd. ever existed as a separate entity and maintains that it is "merely a commercial name used by ATBD." Therefore, Zap Ltd. "could not have transferred any rights or obligations" to Zap Inc., which could not be the successor in interest to Zap Ltd. Although plaintiffs have established a *prima facie* case that Zap Inc. has standing to bring the RICO claims, where, as here, a party raises a factual challenge to the Court's jurisdiction, the Court "retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." <u>APWU v. Potter</u>, 343 F.3d 619, 627 (2d Cir. 2003) (citation omitted). More specifically, because

---

[7] The remaining cases cited by defendant Frieman are distinguishable and inapposite. The first case, <u>Kalimantano</u>, 939 F. Supp. 2d at 400, does not stand for the proposition that assignment of a RICO claim must be express. Likewise, the other two cases cited by defendant Frieman, <u>Bd. Of Managers v. 72 Berry St., LLC</u>, 801 F. Supp. 2d 30 (E.D.N.Y. 2011), and <u>Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC</u>, 479 F. Supp. 2d 349 (S.D.N.Y. 2007) do not deal with the assignment of RICO claims at all.

the evidence on these jurisdictional issues would overlap substantially with evidence on the merits of the RICO claims, the Court may even "proceed to trial and make its jurisdictional ruling at the close of evidence." Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 (2d Cir. 2006). Normally, the Court would deny defendant Frieman's Rule 12(b)(1) motion without prejudice, let discovery proceed, and allow him to renew this motion as one for summary judgment or for a directed verdict at trial. However, for the reasons discussed below, the standing issue is moot because plaintiffs' RICO claims fail to state a claim.

### III. Plaintiffs' RICO Claims

#### A. Section 1962(c)

The civil RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." In order to establish a claim for violation of this section, "a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (quotation marks omitted). Here, because the SAC does not establish a pattern of racketeering activity, plaintiffs RICO claims fail.[8]

The civil RICO statute defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity. 18 U.S.C. § 1651(5). In order to establish a pattern of racketeering activity, a plaintiff must show "that the predicate acts of racketeering

---

[8] Because plaintiffs' RICO claims do not establish a pattern of racketeering activity, the Court will not consider defendant Frieman's remaining arguments pertaining to the merits of the RICO claims.

activity by a defendant are 'related, *and* that they amount to or pose a threat of continued

criminal activity.'" Cofacredit, 187 F.3d at 242 (citing H.J., Inc. v. Northwestern Bell Tel. Co.,

492 U.S. 229, 239, 109 S. Ct. 2893 (1989)) (emphasis in original).  In other words, a plaintiff

must show both relatedness and continuity.  The continuity requirement can be satisfied by

showing either a "closed-ended" or an "open-ended" pattern of racketeering activity.  See id.

Although plaintiffs maintain that the SAC pleads both closed-ended and open-ended continuity,

it fails to plead either adequately.

In order to prove closed-ended continuity, a plaintiff must demonstrate "'a series of

related predicates extending over a substantial period of time.'"  Id. (quoting H.J., Inc., 492 U.S.

at 242).  Although the Second Circuit has repeatedly maintained that close-ended continuity is

"primarily a temporal concept," id. there are several other "non-dispositive factors" that courts

consider when determining if there is closed-ended continuity, including "the number and variety

of acts, the number of participants, the number of victims, and the presence of separate

schemes."  GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 467 (2d Cir. 1995).  Since

the Supreme Court decided H.J. Inc., the Second Circuit has "never held a period of less than

two years to constitute a substantial period of time."  Cofacredit, 187 F.3d at 242 (internal

quotation marks omitted).  The period for evaluating continuity "is the time during which RICO

predicate activity occurred, not the time during which the underlying scheme operated or the

underlying dispute took place."  Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184

(2d Cir. 2008).

The SAC is clear that the alleged RICO enterprise terminated in June 2010.  It is less

clear in demarcating the beginning of the RICO enterprise. Nevertheless, the earliest the

enterprise could have started would have been in February 2009, at the time when defendant

Kurland and Yarmish agreed to be partners in Zap Ltd. Even assuming that the first predicate RICO act took place in February 2009, the alleged RICO enterprise would have operated for approximately one-and-one-half years. Accordingly, plaintiffs cannot prove that a series of related predicate acts took place over a substantial period.

Perhaps recognizing this difficulty, plaintiffs argue that the RICO scheme began in December 2007, "when Kurland and Yarmish first met to discuss a business partnership." However, a face-to-face meeting to discuss the possibility of going into business together is not a predicate act of mail and/or wire fraud.

Independently, plaintiffs allege that the RICO enterprise began in 1998 when defendant Kurland allegedly committed a related fraud on his former partner Ephraim Chadosh. However, the allegations relating to Chadosh do not allege a RICO enterprise. They simply allege that defendant Kurland transferred the assets of Kol Chefetz, the telecommunications company in which he was a partner with Chadosh, to his personal accounts, and fraudulently misrepresented that Kol Chefetz was not profitable. Although the SAC alleges that defendant Kurland made wire transfers from the Kol Chefetz account to his personal accounts, it does not allege, or even imply, that these wire transfers were interstate transfers that violated the wire fraud statute, 18 U.S.C. § 1343. As a result, plaintiffs do not meet their burden of demonstrating that any alleged actions taken by defendant Kurland against Chadosh are predicate RICO acts related to the fraud alleged in this case.

Similarly, plaintiffs cannot prove an open-ended continuity.[9] In order to prove open-ended continuity, a plaintiff "need not show that the predicates extended over a substantial

_____

[9] The Court notes that plaintiffs argue that the SAC satisfies the open-ended continuity requirement for the first time in their reply brief. In their initial brief in support of their cross-motion to amend, plaintiffs argued only that the SAC would not be futile because the allegations would prove close-ended continuity. Although this argument is improper, see Farey-Jones v. Buckingham, 132 F. Supp. 2d 92, 100 (E.D.N.Y. 2001) ("[I]t is procedurally improper

period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, 187 F.3d at 242 (citation omitted). "This threat is generally presumed when the enterprise's business is primarily or inherently unlawful." Spool, 520 F.3d at 185 (citation omitted). However, no presumption arises if the enterprise "primarily conducts a legitimate business." Cofacredit, 187 F.3d at 243. In those instances, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." Id.

Initially, the SAC alleges that any alleged RICO enterprise terminated on June 1, 2010, and plaintiffs represent the same in their briefs. Plaintiffs thus expressly acknowledge that there is no open-ended continuity. Moreover, the fact that plaintiffs have not alleged any predicate acts since June 2010 militates against the existence of an open-ended pattern of racketeering activity. See Aronov. v. Mersini, No. 14 Civ. 7998, 2015 WL 1780164, at *7 (S.D.N.Y. Apr. 20, 2015) (finding that the fact that plaintiffs did not allege any predicate acts that occurred in the four years prior to commencement of the action suggested that the alleged scheme had come to a close).

Even if the SAC did not include this allegation, it still does not allege sufficient facts to prove an open-ended pattern of racketeering activity. The alleged RICO enterprise's business activities – to provide cell phone services to students in Israel – are not inherently unlawful, a point which plaintiffs appear to acknowledge. Thus, plaintiffs must offer evidence that a scheme using mail and wire fraud, the only predicate racketeering activity they allege, was either the

---

to raise an issue . . . for the first time in reply papers, thereby precluding the [other side] from offering a meaningful response."), the Court will consider it.

regular way of operating the enterprise or implies a threat of continued criminal activity. They

do not do so.

Plaintiffs attempt to prove that racketeering is defendants' regular way of operating their

business by pointing to the allegations related to defendant Kurland's prior alleged fraud against

Chadosh. However, as discussed above, plaintiffs do not allege that any actions taken by

defendant Kurland against Chadosh constitute mail and/or wire fraud. See Cofacredit, 187 F.3d

at 244 (reversing the district court's finding that the plaintiff demonstrated open-ended continuity

because it improperly considered evidence that was not predicate racketeering activity).

Therefore, the allegations in the SAC are insufficient to show that this type of fraud was

defendants' regular way of operating their business. At best, the SAC alleges a "discrete and

relatively short-lived scheme to defraud a handful of victims through racketeering activity." Id.

That is not enough.

B. Section 1962(d)

In order to establish a RICO conspiracy under 18 U.S.C. § 1962(d), "a plaintiff must

prove the existence of an agreement to violate RICO's substantive provisions." Cofacredit, 187

F.3d at 244 (internal quotation marks and citations omitted). Because there is inadequate

evidence that defendants "actually committed predicate acts displaying the continuity necessary

to support a substantive RICO violation," and "no evidence that the [defendants] agreed to

perform additional predicate acts that, if committed, would have displayed continuity sufficient

to establish a pattern of racketeering activity," plaintiffs' RICO conspiracy claim must fail. Id. at

245; see also Aronov, 2015 WL 1780164, at *7 (holding that the plaintiffs' RICO conspiracy

claim failed on a motion to dismiss because they "failed to state a substantive RICO claim and

have made no additional allegations in pleading a RICO conspiracy claim that would establish a pattern of racketeering activity").

Consequently, plaintiffs RICO claims fail as a matter of law. They are therefore dismissed with prejudice and without leave to amend.[10] Finally, the Court is dismissing the RICO claims against the non-moving defendants as well, despite the fact that only defendant Frieman has moved to dismiss the complaint, because the RICO allegations apply to all defendants across the board and plaintiffs have been given a full opportunity to plead and argue the propriety of their RICO claims. See Stein v. World-Wide Plumbing Supply Inc., 71 F. Supp. 3d 320, 327 n.4 (E.D.N.Y. 2014) ("On a motion to dismiss for failure to state a claim, where there are issues concerning a non-moving defendant that are 'substantially the same as those concerning' the moving defendant(s), and where the plaintiff has been given a full opportunity to make out her claim, *sua sponte* dismissal of a claim under Rule 12(b)(6) is appropriate.") (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n. 6 (2d Cir.1990)).

## IV.     Supplemental Jurisdiction

Since the Court dismissed plaintiffs' RICO claims, which are the sole bases for federal jurisdiction in this case, it declines to exercise supplemental jurisdiction over plaintiffs' remaining state and common law causes of action. See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (citation omitted). Those claims are therefore dismissed without prejudice.

---

[10] Plaintiffs have already filed two amended complaints and have not sought leave to file a third. Even if they had, additional allegations would not turn defendants' alleged fraud into a RICO fraud.

**CONCLUSION**

Accordingly, defendant Frieman's [27] motion to dismiss is granted and plaintiffs' [30] cross-motion to amend is denied. The Clerk is directed to enter judgment dismissing plaintiffs' RICO claim with prejudice and their state law claims without prejudice.


**SO ORDERED.**


_____
U.S.D.J.


Dated: Brooklyn, New York
      December 6, 2015